DAMON A. SCHUETZE, ESQ.
Nevada Bar #4047
SCHUETZE & McGAHA, P.C.
601 S. Rancho Drive, Suite C-20
Las Vegas, NV 89106
(702) 369-3225

Attorneys for Plaintiff
Erwin Peralta

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| ERWIN PERALTA, an individual | Case No. |
| Plaintiff, | COMPLAINT FOR: |
| vs. | 1. **DISCRIMINATION IN VIOLATION OF USERRA - 38 U.S.C. § 4301, *et seq.*;** |
| NEVADA DONOR NETWORK, INC., a corporation. | |
| Defendants. | 2. **RETALIATION IN VIOLATION OF USERRA - 38 U.S.C. § 4301, *et seq.*** |
| | [DEMAND FOR JURY TRIAL] |

COMPLAINT

Plaintiff Erwin Peralta ("Peralta") alleges as follows on knowledge as to himself and his own acts, and on information and belief as to all other matters:

## I.

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 38 U.S.C Section 4323(b)(3) because Peralta brings claims for relief for violations of the Uniformed Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq.*

2. Venue is proper in this District pursuant to 38 U.S.C Section 4323(c)(2) because Defendant Nevada Donor Network, Inc. maintains a place of business in this District.

## II.

## PARTIES

3. Peralta was an individual employed by Defendant Nevada Donor Network, Inc. ("NDN"), at its offices located at 2061 East Sahara Ave, Las Vegas, Nevada 89104 from August 1, 2007 until June 14, 2012. Peralta currently lives in Brea, California. He was at all times during his employment with NDN a resident of the County of Clark, State of Nevada.

4. Defendant NDN was and is corporation doing business in the County of Clark, State of Nevada. NDN's office was and is located at 2061 East Sahara Ave, Las Vegas, Nevada 89104.

## III.

## FACTUAL ALLEGATIONS

5. Peralta is a Master Sergeant in the United States Air Force Reserve. Peralta has been an Air Force Reservist for over 21 years. As part of his military obligations, Peralta is required to participate in military training one weekend every month, and complete a two-week training every year.

6. On or about August 1, 2007, Peralta began his employment with NDN as a procurement transplant coordinator.

7. Peralta's job duties as a procurement transplant coordinator included, but were not limited to, organ procurement, organ recovery, transportation, and post-donation follow-ups.

8. Throughout his employment with NDN, Peralta always received excellent performance ratings and some of the highest raises offered by NDN.

9. Prior to being hired, Peralta told NDN that he was an Air Force Reservist and that he would have ongoing military training obligations during his employment.

10. In December 2011, Barry Grace ("Grace"), Director of Organ Recovery, became Peralta's direct supervisor.

11. In or around December 2011, Peralta told Grace that he was an Air Force Reservist and would have military obligations at least one weekend a month and a two-week training once per year. Peralta also gave Grace his 2012 Air Force Reserve training schedule. Peralta told Grace that the schedule was subject to change, but that Peralta would give as much advance notice of his training obligations as possible.

12. From January 6 to January 8, 2012, Peralta attended Air Force Reserves training at March Air Force Base.

13. From January 17 to January 20, 2012, Peralta attended Air Force Reserves training at Travis Air Force Base.

14. On February 2, 2012, Peralta received two (2) written warnings for alleged safety violations.

15. The first warning Peralta received on February 2, 2012, dated January 24, 2012, was for alleged improper disposal of blood tubes that had been drawn on November 17, 2011 and placed in an O.R. bag. The warning stated that it was a first offense and that Peralta would be suspended for three (3) days.

16. When Grace gave Peralta the written warning on February 2, 2012, he told Peralta that Peralta was not the person who left the blood tubes in the O.R. bag, but that Peralta was still accountable because he was "involved in the case."

17. A true and correct copy of a February 2, 2012 written warning that Peralta received from NDN is attached hereto as Exhibit "A", and by this reference incorporated herein.

18. Peralta received a second warning on February 2, 2012. The warning was dated January 24, 2012 and was for allegedly turning in a chart with blood on it.

19. The February 2, 2012 warning arose from case ZAK394 that Peralta took over from Kyle Machynia ("Machynia"), procurement transplant coordinator, in the middle of the case while test results were still pending.

20. On January 24, 2012, when Machynia gave the chart for case ZAK394 to Peralta, it had a blood stain on it.

21. Peralta was disciplined for the blood stain on the chart. Machynia was not.

22. The warning related to case ZAK394 that Peralta received on February 2, 2012 stated that it was a first offense and that Peralta would be suspended for three (3) days.

23. A true and correct copy of a February 2, 2012 written warning that Peralta received from NDN is attached hereto as Exhibit "B", and by this reference incorporated herein.

24. From February 3 to February 5, 2012, Peralta attended Air Force Reserves training at March Air Force Base.

25. In February 2012, Peralta told Grace that he was required to attend Air Force Reserve training in Korea for two (2) weeks during April 2012

26. From March 9 to March 11, 2012, Peralta attended Air Force Reserves training at March Air Force Base.

27. On or around March 27, 2012, Peralta was given a verbal warning for allegedly mislabeling an organ box.

28. The March 27, 2012 warning arose from a case where Peralta was able to recover a section of the spleen for the heart transplant team. The warning was because Peralta allegedly did not check spleen on the outside label of the organ box.

29. The heart transplant team did not complain that Peralta did not mark the spleen label on the organ box.

30. A true and correct copy of a March 27, 2012 verbal warning that Peralta received from NDN is attached hereto as Exhibit "C", and by this reference incorporated herein.

31. On March 27, 2012, Peralta told Grace and Galyn Shoenstein, ("Shoenstein"), Assistant Director of Organ Recovery Services, that he had military training obligations in Korea during April 2012.

32. Shoenstein was visibly agitated in response to Peralta telling her that he had a two-week Air Force Reserve training.

33. When Peralta told Shoenstein about his military obligations, she told Peralta that NDN should find a replacement for Peralta because NDN was short staffed.

34. On March 27, 2012, Shoenstein asked Peralta if he was "going on vacation again" after he told her that he would be gone for two-weeks to fulfill his military obligations. Grace laughed at Shoenstein's comment.

35. On March 27, 2012, Peralta told Grace and Shoestein that military duty was not vacation.

36. On March 27, 2012, Grace told Peralta that, "It must be nice to be in the military because you are given so much time off."

37. From April 13 to April 15, 2012, Peralta attended Air Force Reserves training at March Air Force Base.

38. On or around April 18, 2012, Peralta received two (2) warnings for alleged failure to follow instructions.

39. The first warning, dated April 12, 2012, was a verbal warning for alleged failure to complete a death record review for chart/referral number 842351.

40. In response to the warning for alleged failure to complete a death record review, Peralta told Grace that he had gone to the hospital and the medical records department could not find the chart for chart/referral number 842351.

41. Peralta could not complete the death record review for chart/referral number 842351 without the chart that the hospital had been unable to locate.

42. A true and correct copy of a April 18, 2012 verbal warning that Peralta received from NDN is attached hereto as Exhibit "D", and by this reference incorporated herein.

43. Peralta also received a written warning on April 18, 2012.

44. The April 18, 2012 written warning arose from Peralta's alleged failure to timely get a doctor to pronounce a patient dead on case ZDK152.

45. On April 18, 2012, Grace told Peralta he should have found anyone in a "white

1  coat" in the hospital to pronounce the patient deceased on case ZDK152.

2  46. Prior to April 18, 2012, NDN told Peralta never to leave a patient alone during a case.

4  47. Prior to April 18, 2012, Grace stated during multiple staff meetings that if a procurement transplant coordinator had any issues with doctors, nurses or hospital staff, that Grace would come down to the hospital personally and take care of the issue.

7  48. During case ZDK152 there was only one doctor on the schedule in the hospital and the doctor was helping other patients in the emergency room.

9  49. A doctor eventually pronounced the patient on case ZDK152 dead.

10  50. The transport team was not delayed in getting the organs to the recipient on case ZDK152.

12  51. The April 18, 2012 warning stated that it was a first offense and that Peralta would be suspended for three (3) days.

14  52. A true and correct copy of a April 18, 2012 warning Peralta received from NDN is attached hereto as Exhibit "E", and by this reference incorporated herein.

16  53. On or about April 19, 2012, Peralta gave Grace his written orders for his Air Force Reserve training from April 27, 2012 to May 16, 2012 in Korea.

18  54. Before leaving for his two-week military training obligations Peralta set an auto-response on his NDN email alerting anyone who sent him an email that he was out of town from April 27 through May 16.

21  55. From April 27, 2012 - May 16, 2012, Peralta attended Air Force Reserves training in Korea.

23  56. On May 8, 2012, Kathy Crabtree ("Crabtree"), President of the Board of Directors for Nevada Donor Network, emailed Peralta requesting data concerning the first quarter of 2012.

26  57. Peralta responded to Crabtree's May 8, 2012 email when he returned to the office on May 17, 2012.

28  58. On May 21, 2012, Peralta requested June 8, 2012 through June 11, 2012 off work

for military training.

59. On or around May 28, 2012, Peralta received the NDN work schedule for June 2012. Peralta asked Shoenstein why his hours had been reduced for the week of June 4, 2012.

60. Shoenstein told Peralta that he was being given less hours during the week of June 4, 2012 because he was taking time off that weekend for military training.

61. On or around May 28, 2012, Peralta complained to Grace about his hours being reduced during the week of June 4, 2012 because Peralta had Air Force Reserve training.

62. On or around May 28, 2012, Grace told Peralta that he was not scheduled for his normal hours because Peralta was working for the military the weekend of June 8 through June 11, 2012.

63. Grace told Peralta that he could use his vacation time to make up reduced work hours during the week of June 4, 2012.

64. On June 4, 2012, Peralta was given a written warning for two (2) alleged work performance issues.

65. Peralta received a written warning on June 4, 2012 for not providing Crabtree with data reports that she requested in a May 8, 2012 email that Peralta received while he was on military leave.

66. Grace told Peralta when he gave Peralta the written warning on June 4, 2012 that Grace knew Peralta was on military leave when Crabtree requested the data, but since Crabtree complained, Grace had to give Peralta a write up.

67. The June 4, 2012 warning stated Peralta was suspended for three (3) days.

68. A true and correct copy of a June 4, 2012 written warning Peralta received from NDN is attached hereto as Exhibit "F", and by this reference incorporated herein.

69. From June 8 to June 11, 2012, Peralta attended Air Force Reserves training at March Air Force Base.

70. On June 12, 2012 at 11:11 a.m., Peralta emailed Grace, Joe Ferreira ("Ferreira"), NDN's Chief Executive Officer, and Brooke Hodge ("Hodge"), Director of Human Resources, a response to his June 4, 2012 suspension.

71. In his June 12, 2012 email Peralta also told Grace, Ferreira, and Hodge that he had consulted with the Department of Labor and Veterans Education and Training Services, and filed a case with the Employer Support of the Guard and Reserve ("ESGR").

72. A true and correct copy of Peralta's June 12, 2012 email to Grace, Ferreira, and Hodge is attached hereto as Exhibit "G", and by this reference incorporated herein.

73. On June 12, 2012 at 2:45 p.m., Grace sent Peralta an email stating that he would now be required to present documentation to verify his military leaves of absence prior to requesting time off for military leave.

74. Prior to June 12, 2012, Peralta had never been required to present documentation to NDN to verify his military leaves of absence prior to requesting time off for military leave.

75. A true and correct copy of Grace's June 12, 2012 email to Peralta is attached hereto as Exhibit "H", and by this reference incorporated herein.

76. On June 14, 2012, was called into a meeting with Grace, Ferreira, Hodge, and Simon Keith. During that meeting Peralta was told that he was terminated for "chronic performance issues and safety violations."

77. During the June 14, 2012 meeting Peralta asked Ferreira what his alleged "chronic performance issues" were that led to his termination. Grace told Peralta that it was because he did not follow directions at North Vista.

78. During the June 14, 2012 meeting Peralta asked Ferreira what the alleged "safety violations" were that led to his termination. Ferreira told Peralta that he had left blood tubes in an O.R. bag and turned in a chart with blood on it.

79. During the June 14, 2012 meeting Peralta asked Ferreira if Peralta was assumed to be the person responsible for the safety violations.

80. During the June 14, 2012 meeting Ferreira told Peralta that Peralta was not assumed to be the person who caused the safety violations, but NDN was terminating his employment.

81. As a result of NDN's unlawful conduct as set forth in this Complaint, Peralta has suffered and continues to suffer economic damages and other damages as will be

proved at the time of trial.

## IV.

## FIRST CLAIM FOR RELIEF

(Discrimination in Violation of USERRA - 38 USC § 4301, *et. seq.*)

(Against Defendant NDN)

82. Peralta realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

83. Defendant NDN is subject to suit as an "employer" under the Uniformed Employment and Reemployment Rights Act ("USERRA") codified in 38 U.S.C. Section 4301, *et seq.*

84. Peralta is protected under USERRA because he is, and at all times material to this Complaint was, a member of the uniformed services as a member of the United States Air Force Reserve.

85. Peralta notified NDN of his military status and orders at the inception of his employment and at various times throughout the course of his employment.

86. Defendant NDN discriminated against Peralta in direct violation of USERRA on the basis of his membership in or obligation to perform service in a uniformed service by denying him employment and benefits of employments. NDN's acts of discrimination included, but were not limited to:

    (a) Reducing Peralta's hours because he asked for time off for military service;

    (b) Giving Peralta pretextual write ups for alleged safety violations he did not cause;

    (c) Giving Peralta pretextual write ups for alleged performance problems;

    (d) Terminating Peralta's employment because he was a member of the United States Air Force and because he took pre-authorized leaves for military training.

87. As a proximate result of NDN's wrongful conduct as described above, Peralta has

1  suffered and continues to suffer lost wages, lost employment, lost employment benefits, and other economic damages.

88. NDN's acts were carried out in a willful manner, entitling Peralta to liquidated damages pursuant to 38 U.S.C. Section 4323(d)(1)(B).

89. USERRA provides for an award of reasonable attorneys' fees, expert witness fees and costs incurred by a person in an action brought under its terms. Peralta has employed and will continue to employ attorneys for the initiation and prosecution of this action. Peralta has incurred and will continue to incur attorneys' fees and costs incurred herein, as a direct and proximate result of the Defendants' wrongful conduct. Peralta is entitled to an award of attorneys' fees, expert witness fees, and costs against Defendants and each of them.

V.

## SECOND CLAIM FOR RELIEF

**(Retaliation in Violation of USERRA - 38 USC § 4301, *et. seq.*)**

**(Against Defendant NDN)**

90. Peralta realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

91. Defendant NDN is subject to suit as an "employer" under USERRA codified in 38 U.S.C. Section 4301, *et seq.*

92. Peralta is protected under USERRA because he is, and at all times material to this Complaint was, a member of the uniformed services as a member of the United States Air Force Reserve.

93. Peralta notified NDN of his military status and orders at the inception of his employment and at various times throughout the course of his employment.

94. Defendant NDN retaliated against Peralta because he exercised a right provided for in the USERRA statute. NDN's acts of retaliation included, but were not limited to:

    (a) Reducing Peralta's hours because he asked for time off for military service;

    (b) Giving Peralta pretextual write ups for safety violations he did not cause;

      (c)      Giving Peralta pretextual write ups for alleged performance problems;

      (d)      Terminating Peralta's employment because he was a member of the United States Air Force and because he took pre-authorized leaves for military training.

95. As a proximate result of NDN's wrongful conduct as described above, Peralta has suffered and continues to suffer lost wages, lost employment, lost employment benefits, and other economic damages.

96. NDN's acts were carried out in a willful manner, entitling Peralta to liquidated damages pursuant to 38 U.S.C. Section 4323(d)(1)(B).

97. USERRA provides for an award of reasonable attorneys' fees, expert witness fees and costs incurred by a person in an action brought under its terms. Peralta has employed and will continue to employ attorneys for the initiation and prosecution of this action. Peralta has incurred and will continue to incur attorneys' fees and costs incurred herein, as a direct and proximate result of the Defendants' wrongful conduct. Peralta is entitled to an award of attorneys' fees, expert witness fees, and costs against Defendants and each of them.

WHEREFORE, Peralta prays for judgment as set forth below.

## VI.

## **PRAYER**

1. For general damages, according to proof on each cause of action for which such damages are available;

2. For compensatory damages, according to proof on each cause of action for which such damages are available;

3. For liquidated damages, according to proof or each cause of action for which such damages are available;

4. For prejudgement and post-judgement interest according to law;

5. For reasonable attorneys' fees incurred in this action on those causes of action for which such fees are recoverable under the law;

6. For NDN to comply with the provisions of USERRA;

1  7. For prompt reinstatement of Peralta to his position of procurement transplant
2  coordinator;
3  8. For costs of suit incurred in this action; and
4  9. For such other and further relief as the Court deems proper and just.

Dated: ~~February~~ March 13, 2013

SCHUETZE & McGAHA, P.C.

By: _____
DAMON A. SCHUETZE, ESQ.
Nevada Bar #4047
601 S. Rancho Drive, Suite C-20
Las Vegas, Nevada 89106
Attorneys for Plaintiff
Erwin Peralta

COMPLAINT
12

## DEMAND FOR JURY TRIAL

Plaintiff Erwin Peralta hereby demands a trial by jury on all causes of action alleged herein in the Complaint For Damages.

Dated: February ~~February~~ March 12, 2013

SCHUETZE & McGAHA, P.C.

By: _____
DAMON A. SCHUETZE, ESQ.
Nevada Bar #4047
601 S. Rancho Drive, Suite C-20
Las Vegas, Nevada 89106
Attorneys for Plaintiff
Erwin Peralta